In re Application for Disbarment of L. E. WAGGONER,
Attorney at Law.

(199 N. W. 244.)

(File No. 5564.　Opinion filed June 14, 1924.).

1. **Attorney and Client—Disbarment—Unprofessional Conduct—Unprofessional Conduct for County Attorney to Take Reward for Finding and Returning Stolen Property.**

    It is unprofessional conduct for attorney, while prosecuting attorney, to take reward for recovering stolen property and returning it to owner.

2. **Attorney and Client—Disbarment—Unprofessional Conduct—Unprofessional Conduct to Induce Sheriff to Violate Duty.**

    It was improper and unprofessional conduct for attorney to induce sheriff to violate his duty by allowing one in jail, in default of bond, to leave the jail and state.

3　**Attorney and Client—Disbarment—Unprofessional Conduct—Unprofessional Conduct to Invoke Prosecution to Bring About Settlement of Civil Action.**

    It was dishonorable and unprofessional for an attorney to cause prosecution to be instituted without foundation or probable cause to bring about a settlement of a civil action, even thought attorney did not therein represent that he was county attorney.

4. **Attorney and Client—Pleadings—Demurrer—Allegations of Disbarment Complaint Admitted by Demurrer.**

    For purposes of demurrer to disbarment complaint, allegations thereof are to be taken as true.

5. **Attorney and Client—Unprofessional Conduct—Statement in Former Opinion Held to Set Too Low Standard of Professional Conduct.**

    Too low standard of professional conduct held set by statement in former opinion of Supreme Court that disbarment should be resorted to only where. the evidence and circumstances are such as to show that respondent is so lacking in ability or character as to be wholly unfit to be intrusted with the interest of others.

Application for disbarment of L. E. Waggoner.　Demurrers to complaint overruled.

*Buell F. Jones,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General, for the prosecution.

*L. E. Waggoner,* of Sioux Falls, pro se.

POLLEY, J.  On the 8th day of January, 1924, certain charges were filed in this court accusing L. E. Waggoner, a duly licensed and practicing attorney of this state, of improper and unprofessional conduct as an attorney at law.  Thereupon an order was made and entered, referring the charges to the Attorney General, and directing him to investigate the same and report thereon to the court.  Such investigation was made and report thereof filed.  In such report the Attorney General finds that the facts disclosed by such investigation are sufficient to warrant disbarment proceedings against the accused, and recommends that a formal complaint in disbarment proceedings be filed against said accused.  An order to that effect was made, and complaint was filed on the 14th day of April, 1924.

The complaint contains three separate charges.  The first of these charges is designated as the Gutmann robbery charge; the second as the Schmall charge; and the third as the Prlisch charge. To each of these charges the accused filed a separate demurrer on the ground that such charge does not state facts sufficient to constitute ground for disbarment.  These demurrers admit all of the facts charged in the complaint, and leave for the court only the duty of determining the legal conclusions to be drawn from the facts so admitted.

[1]  The Gutmann charge is based on the following facts and circumstances:  During the years 1919, 1920, 1921, and 1922 the accused was the state's attorney of Minnehaha county.  On or about the 16th day of September, 1922, certain sample trunks owned by Gutmann & Son, and containing samples of jewelry of the value of $50,000, were stolen from a railway depot in said county.  This jewelry was insured against loss by theft, and the insurance company that was carrying such risk offered a large reward for the recovery or information leading to the recovery of said trunks and a proportionate amount of such reward for the return of any part of said jewelry.  The accused took vigorous action, not only to recover the stolen property, but also to apprehend and convict the thieves.  The result of this action by accused and other officers of the law was that a considerable quantity of the stolen property was recovered and returned to the owners thereof, and at least three parties were convicted of said theft. The recovered property was used by the accused as evidence in the

trial of the convicted parties. The accused thereafter turned said recovered property over to the owners, and received the portion of the reward offered that the recovered property bore to the whole value, which amounted to $1,800. Of this amount the accused turned over to each of two other parties who had assisted in the recovery of said property the sum of $600, and kept the remaining $600 as his own share of the reward. Later on an additional amount of said stolen property was found and returned, and $350 of the said reward was paid to the accused, all of which was retained by him. This made a total amount received by him, as a reward for the recovery and return of said stolen property of $950. Whether the act of the accused in receiving this reward constitutes improper and unprofessional conduct, is the issue to be determined on this charge.

To the general rule that, when a reward is offered to the general public for the performance of some specified act, such reward may be claimed by any person who performs such act, is the exception of agents, employes and public officials who are acting within the scope of their employment or official duties. 24 Cyc. 1753. In this case the accused, at the time of the acts complained of, was state's attorney of Minnehaha county, and as such it was his duty to apprehend and prosecute the guilty parties. As such officer, it was his duty to use all reasonable means to recover the stolen property in order that it could be used as evidence in the trial. In this case the stolen property was used as evidence in the trial. It is assumed that it was necessary evidence; therefore it was the duty of the accused to secure the property, if possible, to be used for that purpose. After it was no longer necessary for that purpose, it was his duty to turn it over to the owners, or to some one authorized to receive it for the owners. It was not necessary, however, to take it to the owners in another state, as was done in this case.

It is contrary to public policy for a prosecuting attorney to have any interest, other than the performance of his official duty as officer, in the outcome of a public prosecution. It is true, conviction was not a condition of the offer of the reward in this case. but the principle is the same, and it follows as a necessary conclusion that accused's conduct in taking the reward was unprofessional.

[2]   The Schmall charge grows out of the following facts: In December, 1923, one Carl Schmall was arrested in Minnehaha county, charged with a violation of the prohibition law.  His bail was fixed at $2,500, in default of which he was remanded to the sheriff and confined in the county jail.  His home was at Lake Benton, Minn., and he wished to go to said place to try to secure bail.  He employed the accused to represent him as counsel.  Accused went to Vincent Knewel, the sheriff of Minnehaha county, and requested and urged the said sheriff to take, or to permit to be taken, the said Schmall to Lake Benton to secure a bail bond.  The sheriff was reluctant to permit Schmall to be taken out of the jurisdiction of the state, but the accused insisted; said he would pay the sheriff $25, drive his own car, and guarantee the return of the prisoner.  Upon these promises, the sheriff permitted said Schmall to go, in charge of a deputy sheriff, with the accused to Lake Benton.  They went to the prisoner's home, and while there, the prisoner, on the pretext of changing his clothes, was permitted to go into another room.  From this room he made his escape through an outer door, and has not since been heard from.  The accused paid the sheriff the sum of $25 as promised.

We have no hesitancy in holding that accused's part in this action constitutes improper and unprofessional conduct.  He, as a lawyer, knew that the sheriff had no right to permit Schmall to leave the state, or to leave the jail, except as directed by the court that issued the commitment, until such bail was furnished.  He also knew that the sheriff would have no right of control by virtue of said commitment, over the said Schmall, after they entered the state of Minnesota, and that he could not return Schmall to this state unless he came willingly.  In persuading the sheriff to permit Schmall to be taken out of the jurisdiction of this state, he induced him to neglect his duty as sheriff, to violate the laws of this state and to violate his oath of office.  A more glaring case of debauchery of a public officer could hardly be imagined, and the sheriff, in permitting himself to be thus used, was guilty of a misdemeanor under the provisions of sections 3767, 3806, 3815, Rev. Code 1919,  and guilty of a misdemeanor under the provisions of section 7011.

[3]   The Prlisch charge is based on the following statement of fact.  During the month of February, 1923, the accused was

employed as attorney by one Mrs. W. J. Prlisch, for the purpose of instituting a divorce proceeding and obtaining a property settlement from her husband. Prlisch had previously been married to and divorced from one Clementine D. Prlisch, and had remarried. The former wife will be referred to herein as Clementine D. Prlisch, and the present wife as Mrs. W. J. Prlisch. During the said month W. J. Prlisch was visiting at the home of one Donat, in Chicago, Ill., who was an intimate friend and former business partner of said W. J. Prlisch. Donat's wife was a relative of Clementine D. Prlisch, and she was temporarily residing at the home of said Donat. While said parties were so staying at the home of said Donat, the accused went to the city of Chicago and went to the office of the county attorney of Cook county, and represented to one Frank Southrada, one of the assistant attorneys of Cook county, that he (the accused) was then state's attorney of Minnehaha county, S. D.; that the said Prlisch and Clementine D. Prlisch were living in a state of open adultery and fornication at the home of the said Donat; that defendant requested that prosecution be instituted against said Prlisch and Clementine D. Prlisch, on the ground of adultery and fornication, pursuant to the statutes of the state of Illinois. This request was granted, largely on the representation that the said defendant was then acting as the state's attorney of Minnehaha county. Defendant filed and verified a criminal complaint charging the parties with the crime aforesaid, and caused their incarceration in a cell in the police station, over night. This prosecution was instigated by the accused for the sole purpose of securing a divorce and a property settlement for Mrs. W. J. Prlisch, and accused offered and proposed that, if the said W. J. Prlisch would deed certain lots located in Dell Rapids, S. D., to Mrs. W. J. Prlisch and pay for the support and maintenance of the said Mrs. W. J. Prlisch from October, including hospital and physicians' bills and attorneys' fees, and expense of divorce suit, approximating $2,000, that the criminal proceedings instituted by accused would be dismissed. When the criminal case against the said parties was called for trial, the accused failed to appear, and said prosecution was dismissed. At the time of the institution of said criminal prosecution, said W. J. Prlisch and Clementine D. Prlisch were both over 60 years of age and had enjoyed a good reputation for good morals in the com-

munity in which they lived. The representation by the accused that he was state's attorney of Minnehaha county, was false and untrue, his term of office as such state's attorney having expired on the 1st day of January, 1923. Said prosecution was instituted without foundation or probable cause, but for the sole purpose of intimidating said W. J. Prlisch, and coercing him to consent to a decree of divorce in favor of Mrs. W. J. Prlisch, and bringing about a property settlement in such divorce prceedings, satisfactory to the accused and to Mrs. W. J. Prisch.

This charge is by far the gravest of the three. It involves moral turpitude on the part of accused, if, indeed, it does not charge criminal extortion and blackmail. Accused invoked the power of the criminal arm of the law to bring about the settlement of a civil action. It was an attempt to secure a property settlement by the exercise of duress and intimidation. In this proceeding the accused showed a total lack of any appreciation of the duties or responsibilities of an attorney at law.

[4] Upon the oral argument the accused stated that he did not represent to the state's attorney of Cook county that he was the state's attorney of Minnehaha county, but that, of course, for the purpose of the demurrer, such alleged representation must be taken as true. Even though he did not make that representation, his conduct, as otherwise alleged under the Prisch charge, was dishonorable and unprofessional.

[5] We here desire to correct a statement made in Re Bartlett et al, 47 S. D. 208, 197 N. W. 285. Therein we said:

"Indeed, we might say that it should be resorted to only where the evidence and circumstances are such as to show that the respondent is so lacking in ability or character as to be wholly unfit to be intrusted with the interests of others."

Upon reflection, we are of the opinion that we inadvertently set too low a standard of professional conduct. That sentence should be stricken from the opinion.

Further discussion of the present case is wholly unnecessary. The facts alleged under each charge constitute dishonorable and unprofessional conduct. The demurrers to the respective charges are overruled, and the accused may have 30 days to serve and file answers to the charges.

Note.—Reported in 199 N. W. 244. See, Headnote (1), American Key-Numbered Digest, Attorney and client, Key-No. 45, 6 C. J. Sec. 60; (2) and (3), Attorney and Client, Key-No. 38, 6 C. J. Sec. 58; (4) Attorney and client, Key-No. 52, 6 C. J. Sec. 71 (1925 Anno.); (5) Attorney and client, Key-No. 58, 6 C. J. Sec. 40 (1925 Anno.).